**INTERNATIONAL & G. N. RY. EMPLOYÉS' HOSPITAL ASS'N v. BELL.**
**(No. 7895.)**

(Court of Civil Appeals of Texas. Galveston. June 3, 1920. Rehearing Denied June 24, 1920.)

1. **Master and servant** ⊂═92(1) — **Employés' hospital association held mutual benefit association, and not insurance company.**

The International & Great Northern Railway Employés' Hospital Association, formed to provide medical and surgical treatment for its members, which include all the employés of the International & Great Northern Railway Company, *held* not an insurance company, but a mutual benefit association, and its contracts with its several members cannot be regarded or construed as contracts of insurance.

2. **Master and servant** ⊂═92(1)—**Rules of railway employés' hospital association held not to authorize treatment away from line of railway.**

A rule of the International & Great Northern Railway Employés' Hospital Association *held* not to authorize the treatment of a member away from the line of the railway, or by other than one of the physicians of the association, and a member who was suddenly taken

---
⊂═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

sick in St. Louis, Mo., while in the performance of his duties as an employé of the railway, was not entitled to receive from the association money expended for medical services, although under his contract of employment with the railroad he was required to pay monthly dues to the association.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Suit by W. D. Bell against the International & Great Northern Railway Employés' Hospital Association. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Sam'l B. Debney, of Houston, for appellant.

Kennerly, Williams, Lee & Hill, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellant hospital association to recover hospital, medical, and surgical expenses incurred by him during a serious spell of sickness which befell him in the city of St. Louis, Mo., while in the performance of the duties of his employment by the International & Great Northern Railway Company. The plaintiff in his petition alleges, in substance that he resided at Houston, was a member of the defendant association, which was incorporated, and that his membership and that of other employés was a condition of employment, and that the membership fees were withheld from his salary; that the defendant, though termed a benevolent and charitable association, was not, but that its benefits could only be enjoyed by its members for consideration paid, and that the defendant had accumulated a large surplus. He further pleaded that in the course of his employment he started from Houston to Chicago, fell seriously sick, and arrived at St. Louis in June, 1918; was delirious; had typhoid fever; was taken to a hospital and treated there; and that at no time was he in a condition to be carried to the defendant's hospital at Palestine, Tex. He alleged the amount of his expenses and charges for nurses, physicians, surgeons, medicines, hospital fees, etc., to be $1,193.10; that he was too ill to communicate with the chief surgeon of the hospital; that officials of the railway operating for the United States Railroad Administration knew of his sickness, as well as members of the defendant's trustees and its chief surgeon; and that the defendant is a mutual benefit, health, and accident insurance association. The defendant answered by general demurrer and general denial. The trial in the court below without a jury resulted in a judgment in favor of plaintiff for the sum of $1,193.10.

There is no dispute as to the facts, the only controversy being over the construction of the °charter, rules, and by-laws of the defendant association. The defendant is a corporation organized under the laws of this state. The charter of defendant states that—

The corporation is formed "to provide medical and surgical treatment and care for the employés of the International & Great Northern Railway Company," or of its receivers, or persons operating the property, "who may be injured or disabled by accident or sickness while in such employment, to such extent only and under such rules and regulations as may be prescribed by the trustees, and to furnish such other and additional privileges and benefits to said employés as may from time to time be directed by the board of trustees of this association, as hereinbefore expressed, and to that end purchase, erect and maintain suitable buildings for hospitals, or other purposes, along the line of said railway and its branchés. The domicile and principal office of this corporation shall be at Houston, Harris county, Texas, and its purposes may be performed at such other places as may be deemed necessary and expedient, along the line of the International & Great Northern Railway in the state of Texas and other states and territories, in the United States, into or through which its line may, at any time hereafter be extended, constructed or operated."

All employés of the railway company by their contract of employment become members of the hospital association, and pay monthly dues or hospital fees which are retained by the railway company out of the wages or salary of the employés. There are eight trustees, equivalent to directors; four officials of the railway appointed annually, four elected by the employés.

The general rules adopted by the trustees, under the charter, and declaring the benefits, as far as claimed to be relevant· by either party, were the following:

"It being contemplated, on the consideration of a contribution paid monthly by the members of the International & Great Northern Railway Employés' Hospital Association, to provide a home and medical attention for the sick and injured of said association, it is hereby directed:

"Rule 1. Such medical relief shall only be furnished at the hospital of the association, except as hereafter may be designated."

"Rule 4. Benefits given outside of association hospital and under what restrictions:

"(a) Any member who may be too seriously ill or injured to be moved may receive temporary medical aid along the line of said railway.

"(b) Persons sick with slight diseases and who could probably be cured in three days may receive treatment outside of the hospital from the nearest association physician. But if their disease is liable to be protracted beyond that time they must go into the hospital, or else provide for themselves outside of the association.

"(c) After a local surgeon assures a patient that he can with safety be removed to a hospital, and such patient is likely to be an invalid for several days longer, and does not repair at once to said hospital, then no further aid will be extended to such patient at the expense of the association.

"(d) The association will not pay for the services of physicians, other than their own

local surgeons, except such outside medical treatment be specially authorized in writing by the chief surgeon of the association, or in line with rule 620 of the rules of the transportation department (all injuries to passengers or trespassers and notifications by conductors not applicable), with the exception that expenses incurred by reason of rendering such medical treatment to injured passengers or injured trespassers, will be borne by the International & Great Northern Railway Company.

"(e) When a patient is too seriously sick or injured to be promptly sent to the association hospital, the attending physician or surgeon must at once wire full report to the chief surgeon, and act under instructions. However, at the earliest possible moment, consistent with the patient's safety, he must be sent to the hospital.

"(f) A member may receive treatment at home, at a point where the association has a salaried surgeon. He will attend members at their homes, if they prefer not to go to the hospital, and supply them with necessary treatment, but the association will pay no other expense.

"(g) When it becomes necessary to furnish temporary treatment to the seriously sick or injured, outside of the association hospital, no bills will be allowed, except such as are specially authorized by the chief surgeon of the association."

The above is the whole of section 4, covering all of the exceptions to the rule that benefits will be given at the hospital alone.

"(5) Sick employés, who pay higher assessments, must not expect any better treatment than those paying a lower assessment, as all will receive only what is necessary to their recovery."

The charter provided that there was to be no capital stock, and that the purpose of the corporation was the support of a "benevolent and charitable undertaking." The by-laws provided that the funds of the association will be used solely in carrying out the purposes and objects of the association as stated in the charter, and that assessments should vary from 60 cents per month to 75 cents and $1 on the basis of varying railroad wages and salaries.

Benefit rule 6 provided that every beneficiary "who desired medical treatment" would be furnished a notice by the "employer" (railroad or receiver) that he was entitled, the employer to be "satisfied" that the person was entitled.

"(9) No person shall receive treatment outside of the hospital, or remain in the same over four months, without special permission from the board of trustees."

"(12) To avoid misapprehension the rules of this association shall be construed as not to authorize the purchase of medicine or appliances, on its account, without an order from some surgeon or physician of the association. Bills not so authorized will not be paid."

Rule 14 of benefits provided that all employés of the railway should be members of the association, entitled to its benefits, subject to the by-laws and general rules.

By rule 16 it was provided that the railway would give free transportation to and from hospitals to beneficiaries as well as to the association's surgeons and employés, and of its supplies, upon the approval of the chief surgeon and trustees.

"(17) Instances may arise that may not be covered by the foregoing general rules, and from the nature of which it would be impracticable to lay down an arbitrary rule. In such special cases the facts should be fully and promptly reported to the chief surgeon."

The by-laws of the association provide that medical and surgical attention to sick and injured employés of the railway "shall only be furnished in accordance with the rules and regulations as may from time to time be approved by the board of trustees."

The chief surgeon is given control of the hospital under the board of trustees, and the power "to appoint and fix the compensation of all physicians and surgeons," and fix rules for them, and approve all bills.

The plaintiff, as alleged by him, while en route to Chicago from Houston in the course of his employment, was taken violently sick in a hotel at St. Louis; a physician was called, and had him removed to a hospital in that city, where he remained desperately sick for five weeks, during which time he was wildly delirious, and has little recollection of what occurred. He was treated and cared for in this hospital from about the 18th of June to the 9th of August. The expenses incurred by him for his treatment in this sickness were the sums stated in his petition, aggregating the sum $1,193.10, and which were shown to be reasonable. One of the trustees of the association, Mr. Werner, was informed of plaintiff's sickness shortly after he was taken to the hospital, but no action by the board of trustees for relief of plaintiff was invoked, and no offer or attempt was made by Mr. Werner to extend the benefits of the association to meet plaintiff's case. No notice was given the chief surgeon, and no authority was asked from or given by him for plaintiff's treatment in the St. Louis hospital.

We cannot agree with the learned trial judge in his conclusion that these facts give appellee a right to recover of appellants the expenses incurred by him for hospital fees and medical attention in the St. Louis hospital.

[1] The appellant is not an insurance company, but a mutual benefit association, and its contracts with its several members cannot be regarded or construed as contracts of insurance. State v. Taylor, 56 N. J. Law, 49, 27 Atl. 797.

The association, as stated in its charter, was formed to provide medical and surgical

treatment for its members, which include all of the employés of the International & Great Northern Railway Company, who may be injured or disabled by accident or sickness while in such employment, under such rules and regulations as may be prescribed by the board of trustees of the association, and to this end to purchase and erect suitable hospitals along the line of said railway and its branches. The domicile and principal office is fixed at Houston, but the charter authorizes the performance of the work of the association at such other places as may be deemed necessary and expedient along the line of the railway. The trustees in the exercise of the powers conferred upon them by the charter to provide rules and regulations for the extension of the benefits of the association to its members, established rules which require that the medical relief given by the association to its members shall be confined to treatment in the hospital of the association, except under the conditions stated in rule 4, above set out.

The trial court held that under subdivision "e" of this rule appellee was entitled to benefits claimed by him. This subdivision is as follows:

"(e) When a patient is too seriously sick or injured to be promptly sent to the association hospital, the attending physician or surgeon must at once wire full report to the chief surgeon, and act under instructions. However, at the earliest possible moment, consistent with the patient's safety, he must be sent to the hospital."

[2] We do not think this subdivision of the rule, considered with its context and in the light of the charter and other rules and by-laws before quoted, can be construed as authorizing the treatment of a member away from the line of the railway or by other than one of the physicians of the association. The fact that appellee, under his contract of employment with the railway, was required to pay monthly dues of 50 cents to the appellant association cannot affect the question of the extent of the benefits to which he was entitled under the charter and rules of the association. Under this construction of these rules he was only promised medical treatment in case of accident or sickness accruing along the line of the road, where the evidence shows appellant had in its employ, for the purpose of treating its members, about 100 physicians and surgeons, and if treated by one of these physicians elsewhere than in the association hospital such treatment could only be temporary, and only in cases of slight sickness which could probably be cured in two or three days, or in cases where the member is too seriously injured or sick to be removed to the hospital. Even in these cases the rules provide no bills for the treatment will be allowed, "except such as are

specially authorized by the chief surgeon of the association."

Appellee is unfortunate in that his sickness befell him where he could not obtain the treatment which his payment of the association dues would have entitled him had his sickness occurred where the facilities for his treatment provided by the association were available, but his misfortune will not justify the extension of the benefits promised him by the association and the imposition of obligations upon the association beyond the terms of the contract as evidenced by the charter and rules of the association.

We think appellant's assignments assailing the conclusions of the trial court that it is liable for the expenses of appellee's sickness, on the ground that such obligation on appellant's part is not shown by the evidence, should be sustained. It follows that the judgment should be reversed, and judgment here rendered for appellant; and it has been so ordered.

Reversed and rendered.